Good afternoon. May it please the Court, Samantha Heifetz for the United States. There are basically two concerns about the District Court decision in this Social Security appeal that animate the government's challenge. With regard to the Step 3 analysis, the concern is the approach that the District Court took to the question of when a person may be automatically entitled to disability benefits because he or she meets the criteria of a listed impairment. Now Social Security has formulated a list under the regulations that allows it to identify people with conditions so severe that they're presumed to be fully disabled and entitled to ongoing benefits if they meet all the criteria of a listing. And as the Supreme Court has recognized in Sullivan v. Zebley, this list reflects standards that are even higher than the basic statutory definition for being disabled because here the question is whether someone gets a per se entitlement. So if the answer at Step 3 is no, the analysis goes on and the claimant has still further opportunity to show based on age and experience and residual functional capacity that they're entitled to benefits. But the standard here is very high because we're saying that if you meet these criteria, then regardless of your age, your work experience, et cetera, then you will be receiving benefits. And so the particular listing that's at issue in this case is of course the spinal disorder resulting in nerve compression characterized by a set of criteria. And the agency's understanding of how important it is that individuals meet all of these criteria is reflected in a number of places, both in other regulations that have long explained that all of the criteria have been met. Well, you're doing more than that, as I understood from your brief. You're saying they have to have been met simultaneously and documented. Isn't that correct? We're saying that there's and we said this in our 2001 rulemaking. We're saying there's a set of criteria and the individual needs to have everything in that set. And the set here is part of 1.04a. So you're no longer saying they have to be simultaneously documented? They do need to be simultaneous. I think that's what I think is the absurdity of your position. OK, but let me explain what I mean by simultaneous, because I do think it may the word may suggest more than we're trying to state. What we're saying is we're looking at someone's longitudinal record. We're not saying, as plaintiff's counsel's brief would suggest, that you have to show up at every single doctor's appointment with a checklist and every single thing needs to be recognized at every appointment. We recognize that people have better days and worse days. What we're looking for, and the regulations state this at Part D, Part H of the musculoskeletal appendix discussion. We explain repeatedly that we're looking for a sufficient clinical record to show that the individual has a condition that's truly characterized by all of the items listed. Well, that's not simultaneous. Well, it has to. That was a poor choice of words on your part, on the administration's part of Social Security. That may be, but simultaneity is a component here. What I mean to say is, it may not be every single day that you go to the doctor. So you want at least one doctor's appointment where they're all appearing simultaneously? Is that what you're saying? That would certainly be important, but I'm not saying that that's dispositive. But is that what you're saying? I'm not asking you what's important. Is that what you're saying? You know, I can't- We really shouldn't have to spend 20 minutes discussing what the word simultaneously means. It's really very clear. Well, you could imagine that there's a difference. I can imagine anything. I just want to know what your position is. Judge Keenan has asked you four times now, what is your position? I'm sorry, I'm not getting it. Simultaneous in a person may be different than simultaneous in every doctor's appointment. So we are looking for an individual who has all of these characteristics- At the same time. At the same time. Now, that doesn't necessarily mean- Where's the law compel that conclusion? Or even support that conclusion? For example, if you look at the 2001, well, there's two answers to that, so if I count in two parts. There's both legal support for that, but there's also the medical basis, which undergirds our legal understanding. So as the Supreme Court explained in Sullivan, the question here is about severity as well as duration. That's also in the regulations. We're trying to identify not your average case of nerve compression, but the most severe cases. And so these characteristics that have been identified as this, quote, set of criteria that we say in the 2001 rulemaking, all of the criteria have to be met. And here we have a set of criteria under 1.04A. We want someone who has everything, because that goes to severity, okay? An individual who has mild nerve compression may have pain, but an individual who has motor loss combined with sensory loss, as the regulation expressly requires, that person has a nerve that's compressed on both sides. Both the side that controls motor strength and the side that controls sensation. That's very important to understanding how severe of a case we're dealing with. Now, while there can be more difficult cases, and Your Honor, Judge Davis, Judge Keeney, you've both noted that there could be records that are more challenging than the one presented here. An individual who at every appointment has three of the four, but never has all four, that person might well be entitled to this listing or its medical equivalent. But that is not the record that we have here today. We have a very different record. And this one, the issue is much plainer, okay? He come, Mr. Radford appears in 2007. Now, there can be no question about the requirement of simultaneity with regard to motor loss and sensory or reflex loss, because that's in the language of the regulation itself. It says evidence of nerve compression characterized by, and the third item down is motor loss accompanied by sensory or reflex loss. So even if a panel thought that there could be less simultaneity across the four different characteristics, there the regulation is exceedingly clear. We don't have that in this record. Well, what kind of medical testimony is there in this record addressing the listing, as opposed to addressing the ability to work? Well, we have repeated doctor's appointments that, of course, with regard to step three, this part of the analysis, the burden is on the claimant to show that they would meet a listing. We don't have doctors of Mr. Radford, he didn't put anything forward. We have expert testimony addressing whether he meets the listing. You have to cobble through the different doctor's visits. That's right, I mean, he didn't assert that he fell within 1.04 at the ALJ hearing. That argument was made in the district court. But 1.04 was considered and it was rejected and it makes, this is very understandable if we look at what the record that was before the ALJ and the discussion by the ALJ tracing the medical history in the ALJ's step four and five portions of the ALJ's opinion gives us an understanding of what the ALJ had in mind. But here, as I said, while there may be harder cases, this is not the harder case. We have a district judge. Yeah, excuse me, just one sec. Sorry about that. How does the ALJ analyze, though, the issue of the listing? The ALJ's decision with regard to the listing is very brief and simply says that it didn't find- It's conclusive, isn't it? It doesn't tell us anything. Right, and as I noted, 1.04 really wasn't discussed at the hearing. It wasn't put forward, and insofar as there could have been perhaps expert testimony or other testimony on that, there wasn't any put forward by the plaintiff. But it was considered, there's reference to the fact that it had been implicitly rejected by the state disability examiners who didn't say that he met a listing, but instead went on to do the residual functional capacity evaluation. But what we do have is some tracing of the medical history. As you said, you have to cobble through and look year to year. What the district court does, and this is very important because this goes to our understanding of why simultaneity matters. What the district court did here was to go through the record and the district court thought, there, I see that item mentioned there. I see that item mentioned there. The problem with this is it was done without any eye towards the timing or the congruity of occurrences. So we have a record- Wasn't the district court kind of left in a box because the ALJ never talked about medical evidence? Well, Bedrock- In relation to the listing. The ALJ just didn't talk about it. So what are you saying, then, the district court, faced with this paucity of analysis, should simply have remanded to the ALJ? Absolutely, Your Honor. If that's the issue, if this panel thinks that what's needed is a more comprehensive explanation from the ALJ- Well, there's no explanation. Right, and that would be the correct approach. So the ALJ could have remanded, as other courts have done, as this court has done, for a more comprehensive. I mean, it's a bedrock principle of administrative law that if there's an insufficient explanation, it first goes back to the agency to offer that explanation. And that's particularly important here. What the district court did was to head into territory that this court has expressly suggested is not appropriate in cases like Craig in 1996, right? It's not for the district court to re-weigh the evidence, conflicting medical evidence, to substitute its judgment for that of the agency to make new credibility determinations. Here, the ALJ did make credibility determinations and did discuss the medical history. It didn't do it under the category step three. It did it under steps four and five, but it's still a discussion of the medical history. But you're absolutely right, Your Honor. A remand, if there's the desire for further explanation, that is the appropriate route, not reversal. Now here, we happen to have a record that speaks quite clearly in the opposite direction of that which the district court said. Because what we have is an individual who comes in in 2007 and has had surgery in August of that year. And there is nothing in the clinical record after August of 2007 to when the date of last insured, that is the end of 2007 when he needs to show that he has this disability. There's nothing to support a finding of this 1.04 spinal disorder resulting in nerve compression, this severe case. We don't have any, for example, straight leg raising tests in 2007. The plaintiff's brief notes that says that there are ten instances in which we have a positive SLR. Over the course of the record, we have more than 16 instances in which it's negative. But five of those, the ones cited by the district court, they're in 2003, back when the injury first occurs. Now the relevant period here, we're talking about an individual who comes in in 2007, seeking benefits at most back to June of 2006. But in that period, we're not seeing the kind of record that is required. Frankly, we don't see it even as far back as 2003, and I'm happy to discuss in great detail why that's the case and to go through the different medical sites and how they don't make the compelling case that the district court cites them for the proposition. But I would just direct your honors to, that you have the administrative record and if one traces those sites, you'll see what I'm referring to. There are instances, particularly if we focus for a moment on the question of motor loss and sensory loss. Sorry? I assume that you decided to use all your time in the first instance. I did, as I hoped I was being responsive to your questions, but I can see that I'm out of time. It was beyond the response to the last question. But you can use all your time there if you'd like. No, I will reserve the rest of it. I do appreciate your help on that score. Thank you. Thank you, your honor. All right, Ms. Hall. May it please the court? The district court judge did the proper thing in this case. As you all noted, the ALJ did not analyze the listing in this case. The state agency physicians who work for the defendant who never saw him did not even mention it. The district court judge is the only one who did a comprehensive analysis of this case, and he concluded that Mr. Radford met listing. Did he step out of his role? Why shouldn't he have just sent it back to the ALJ to perform the proper analysis and then perform the district court's review task? Well, as the Supreme Court noted in Sullivan v. Zebley, when an individual meets a listing, there's nothing left to be adjudicated in the case. They are per se disabled. But that's still the ALJ's call, isn't it? No, your honor, I'd argue it is not, because you send something back for additional proceedings when there's something left to be determined. Say the ALJ did not consider this evidence, but we don't know if he considered if the person would still even be disabled. We have to determine the residual functional capacity. We have to get vocational expert testimony. You don't have any in this case, because- But you don't have any analysis by the ALJ of the medical evidence as it pertains to the listing. Yes, ma'am, you do not. But the district court judge- That's the ALJ's job. He did, but I will note that this ALJ, this particular ALJ, ALJ Miller, has been noted on several occasions to say, I got it right the first time. I have personally- No, you're going outside the record, I think. I apologize. You don't want to do that. Judge Boyle was aware of his history, though, when he signed this order. And he did not want Mr. Radford, who has been struggling with this issue for ten years, to have to have additional delay. And as this court noted in Breeden, that sending it back to him would be additional delay. But Judge Boyle's not an ALJ. Judge Boyle is not an ALJ, but he is very familiar with these cases. He's one of the only judges at the district court level that holds oral arguments in these cases. He has a particular eye for them, and he's very familiar with the regulations, unlike a lot of the district court judges that hear these cases. And when you're found to meet a listing- Is he the only one who awards benefits? He is not the only one, but he is more likely than others to award as opposed to remand. He is one that is more likely. Because he holds oral arguments in the cases, and he listens to them himself instead of- Is that why the agency's here? They finally got to the point where Judge Boyle was awarding benefits in too many cases? I do think that this case would not have been appealed were it not for it being reversed for benefits as opposed to being remanded. I think that they were irritated with the reversal as opposed to a remand. I do think that's why we're here, because this is a very strong listing case. Now, the duration requirement is one year under the Social Security Act. Mr. Radford showed these signs numerous times over the course of five years. We're not talking about an isolated occurrence here. Mr. Radford, in addition to neuroanatomical distribution of pain, which is rampant in the record, pretty much every visit he has neuroanatomical distribution of pain, in addition to that, you have 45 positive signs for nerve involvement that are the ones under the criteria. If we consider neuroanatomical distribution of pain, we have approximately 75 positive signs, 41 negative. So if we're talking that the listing is met when there is a majority of positive, as the appellant concedes that they don't have to be positive every single time, that's scientifically untenable. If you have to have a majority of positive, he still meets the listing. In fact, he has two visits where everything was tested, and often they're not all tested together. Two of the visits in January 2003 and January 2004, they were simultaneously present, all five of them. So even if we're going by that strict reading, which is not present in the plain language, he still meets the listing. And this Court has reversed cases that are not as, I mean, in my view, are not quite as strong as this one, because they have reversed cases at step four and at step five, where the ALJ has considerably more discretion than he has at step three, where there's a per se direction of disability. In Evans v. Heckler and Edwards v. Bowen, the Court reversed at step five, finding that the ALJ refusing to give weight to the treating physician's opinion and having an improper credibility assessment, directed a finding of disability in the case because there was nothing left to be adjudicated in those cases. Now, in this case, the ALJ never even mentioned the treating neurologist's opinion from Dr. Kushner, who treated him for the entire period at issue here, the five years, that he was disabled. He said it over and over again. The ALJ never talked about it. So, but we don't even get to that, and Judge Boyle did not get to that in this case, the treating physician opinion being ignored, because he meets it at step three. You don't have to go to four or five, where the ALJ has more discretion, and there's more evidence that has to be weighed and considered, and you have to talk about past relevant work and whether they can perform other work. As the Supreme Court noted in Sullivan v. Ebley, you don't even have to go to the question of whether they can perform other work or whether they can perform their past work if they're disabled at step three. And that's why step three is a finding where reversal is most appropriate for district court, because there's nothing left to determine, unlike the residual ability to work in step four and step five cases. Now, as was noted, I have difficulty discerning the appellant's interpretation of the listing here. At one point in the opening brief, they say everything has to be simultaneous. In the reply brief, they walk it back, and they say, okay, well, it doesn't have to be simultaneous, but it can't be intermittent, and it doesn't have to be positive every time, but it has to be positive enough. Well, if we're saying more often than not, he meets it. He has a majority positive signs, clearly, 75 to 41. If we're saying that it has to be simultaneous at some points, it just doesn't have to be simultaneous every time, he still meets it because he has several visits where they are all present simultaneously. And to say that something doesn't have to be positive every time is to admit that it is intermittent. It is mostly positive and sometimes negative. So it doesn't matter which way you slice this case. Mr. Radford meets the listing, and if he meets the listing, there's no reason to send it back to an ALJ because we don't need vocational expert testimony to determine if he can do other jobs. We don't need to go any further into the record. Additionally, under Breeden v. Weinberger, this- Do you have anything more recent than Breeden? Well, Your Honor- Breeden was 74. I believe Edwards v. Bowen and Evans v. Heckler were in the 80s. Social Security, as you all are fully aware, does not appeal up here very often. It's usually us appealing, so we're actually in a nice situation of being the appellee. I think that's the issue, though. There are reversals going on at the district court level. As the court noted in- Yeah, reversals and remands for further proceedings. Reversals for benefits. Actually, as the court noted in Edwards v. Bowen, they cited seven recent cases within a couple of years of that ruling where there had been reversals at the district court level. So this is not unheard of. The problem with remanding it is that not only does it lead to additional delay, but it gives the agency another opportunity to wrong the individual again. And I think that is why the agency was upset with the reversal because they did not have the opportunity- And I don't mean to make that, as we were talking about in a previous case, animus. I don't mean to- I was about to ask you if you were going to order the transcript of this oral argument. For the ALJ, if we should reverse and order a remand to the ALJ. Well, and I didn't mean to go outside of the record earlier, but it really comes down to they want the opportunity to do it themselves, but often that means they do the same thing over again. And in cases where you're not sure, you could say, well, the ALJ didn't consider treating physician opinion, but even based on that opinion, we don't know if he's disabled still. He just said he's restricted in some ways. You do need a remand because you have to determine whether or not the individual with those limitations can work or not. Not all treating physician opinions are to the point of there's nothing else they can do. They just maybe can't do what they used to do. That's when you need vocational expert testimony. That's when you need to go back and have another hearing. But here we have per se disability under Sullivan v. Zebley at Step 3 of he- The only other issue when you look at when an individual meets the listing is if they're performing substantial gainful activity. And the ALJ admitted in his earnings records demonstrate that he has not performed any work since he was injured in December of 2002. The ALJ already concluded there was no substantial gainful activity. So there's nothing left for this to go back to the ALJ again to determine. As far as the only contrary evidence that the defendant points to is the January 2004 functional capacity evaluation where they said that he could perform medium work. Well, that's actually mischaracterized. That functional capacity evaluation said that he could perform the lifting requirements of medium work. He was restricted to less than sedentary in his ability to walk. In fact, the specific phrase was that he was- he could only walk for very brief periods in that testing. So that point is just out. He's less than sedentary according to Social Security's regulations under that functional capacity evaluation. But we don't even get there because that's the court note in Sullivan. You don't have to go to Step 4 or Step 5 if you meet it at Step 3. It's presumption of disability and the inquiry is over. Now, as for the reading in that's going on here with simultaneous, as the Seventh Circuit noted in Pitzer v. Sullivan, if it's not present in the plain language of the listing, you can't require an individual to show it in order to be found disabled under that listing. It's just the plain language, and the plain language says characterized by. Now, 75 positive neurological signs, not clumped together in a couple months, but spread out over a period of five years in each year at different appointments, 20 different medical appointments, is certainly characterized by. He is characterized by that condition. He is positive more often than he is negative, and it is present in every year in the record. Now, the defendant makes a citation to his surgery in the summer of 2007, citing that, well, he got better after that. In fact, he did not. And there are records after August of 2007. There are two visits in October of 2007 when he returned to his orthopedic surgeon, Dr. Nelson, and he was noted to start having motor issues again, but specifically sensory issues and neuroanatomical pain, which are under the criteria of listing. So in this case, I would just note that given all these just rampant signs, rampant pain, 75 positives, a clear majority, he has it simultaneously at several visits, any which way you want to interpret that, he meets the listing. And if the listing is met, the inquiry is over, he's not performing work, a finding of disability was directed, and the judge did not want to remand this because there was nothing else left to be determined. It would be a waste of judicial resources. And for the defendant to say that this court and the district court does not have the power to reverse for benefits is just not true. Under the statute, Title 42 U.S. Code 405 Section G, this court can reverse for either new proceedings or an award of benefits. And this court has that power, unlike a lot of agencies, as you all were talking about in immigration, who do not have the power to do that. This court was specifically given that power in the case in Social Security, and it was properly exercised here. I would just close with this. If we cannot reverse based on someone meeting a listing, when can the court reverse? I can't think of an instance where it would be proper for reversal if you say they meet a listing, we admit that, and it's clear in this case, but we can't reverse. Then that power is just pointless because there's nothing left to determine in this case. He meets a listing. He clearly meets a listing. The problem is that if the ALJ doesn't determine whether he meets the listing, what's the court to proceed on? Because the court is reviewing the ALJ's decision. Well, the ALJ's paucity of analysis should not be an excuse for his decision being immune to reversal. That's what I would respond to. I couldn't agree more. A paucity of analysis requires a do-over. Your argument is that it doesn't require a do-over. It just requires the district judge to step into the shoes of the ALJ. Well, I don't think the judge overstepped himself here. He has the authority under the statute to reverse. And in this case, what's key is not that the ALJ has to do his job right because they often do not do their job right. The issue is, is there anything left to determine in this case? And there isn't. His date last insured is 2007. We're here in 2013. The defendant has not alleged that there's any new evidence in this case that needs to be considered that relates back. There's no allegation of that. Not to repeat, but if the ALJ didn't do it, then that's what's left to be done, the ALJ's job. The problem with that argument is that this could keep going up and down. He could continue to not do it. He could continue to ignore it. And again, I'm not going to go outside the record, but Judge Miller has a history of ignoring the appeals counsel and district courts. So this could go up and down, up and down. And the whole time, this poor man is losing his house. He's losing everything he has. He cannot work. He's clearly disabled by the listing. And we cannot continue to harm his life and his well-being because the ALJ refuses to do his job. And I think if there are no more questions, I would leave it at that. There has to be some conclusion at some point. If the agency is not doing their job correctly, the statute allows the district court and this court to reverse. And it has been done several times in the past. And under the Breeden factors, under Supreme Court precedent, this is a proper case for reversal because there's nothing else to decide. And this man, as noted in Breeden, when you have an individual who has been struggling with a condition for 10 years, it's been before the agency for 6 years. In Breeden, it was 5 years. They said this is a very important factor in considering when a case should just be reversed because the agency has had their chance over and again to do the right thing here, and they've chosen not to. Thank you for your time. Thank you, Ms. Hall. Ms. Caisas, do you have some time? Thank you, Your Honor. I just want to make a couple of quick points. Remand is particularly important in this case because 104 wasn't expressly raised before the ALJ. And here we have a medical record where it's one thing to substitute the district court, to substitute in its judgment perhaps in a case where you have a really simple record. What we have here is a really large and complicated medical record that requires some expertise to understand. And I just want to take one example. My opposing counsel pointed to the October 2007 doctor's visit. You'll find the notes for that at AR 471. And I think this is a really good example of the support that there is throughout the record if one looks carefully at the citations. At the October 2007 appointment, the post-surgery appointment, the last piece of evidence in the record, the doctor observes that Mr. Radford is walking without a limp, has a negative straight leg raise. His reflexes are normal. He has normal hip motion. He describes his motion as grossly intact. Now, my opposing counsel said that there was evidence here of sensory loss. So first of all, as we've noted, even under just the very plain language of the regulations without getting into any analysis of simultaneity, we know that we're looking for motor loss accompanied by either sensory loss or reflex loss. And I noted earlier why that's important as it goes to the severity at the disabling level that we're looking for, for a per se disability holding. And here, the only mention that there is of numbness is just in taking the history of the illness, the doctor is writing down what the complaints are of the individual, the history of the illness, and notes right greater than left leg numbness. So this isn't an examination finding. And the regulations prioritize examination findings over just the allegations or complaints of the individual. You'll find that in the introductory sections to the musculoskeletal discussion, part D, part E, part H. This is also important because the record talks principally about the fact that this individual has these symptoms on the left side, and his surgery is on the left side. So right greater than left numbness could be found not to correspond ridiculously to what we're looking for. Indeed, this doctor says in his physical examination, in his description, no true radicular symptoms. No true radicular symptoms means no true symptoms of nerve compression. So I just take this as an example to walk through. And here, in fact, back pain is described as mechanical. And mechanical back pain is distinct from radicular back pain, which is the evidence of nerve compression. So if we had time to walk through every piece of evidence in the record, what you would see is time and time again, things that the district court judge cited as supportive of its 1.04 listing determination, either were statements based on observations, complaints of the plaintiff, not based on actual exams performed by the doctor. When it comes to motor loss, sensory loss, he cites nine places. Four of them are of that type where an exam wasn't being performed for one or both of those. And it was just an observation based on the complaint, a writing down of the complaint of the plaintiff. Four of those nine places flatly contradict. That is to say, when you look at them, you'll see that they're being used for the assertion that there was motor loss, but they actually say motor strength was fine or normal. So it's because that's the kind of record that we have here that a remand is particularly important. As a legal matter, I just want to say with the simultaneity point, plaintiff's understanding that's been presented here would seem to suggest that you could come in over the course of ten years and each year have one or two of the symptoms and eventually build up a record large enough to establish that you meet a set of criteria under these regulations for per se disability. The per se disability stuff, as I've noted, is this very high standard. It's important that we not water it down because when someone qualifies under this, we're saying we don't need to do any more analysis. They don't need to put forth any further evidence. The courts don't need to do any more thinking about the case. So it's a very high standard. The Supreme Court has acknowledged that. It's true that this case is animated by two concerns. One is a concern about seeing that watered down, and another is a concern about reversal where there ought to be remand. I think if there are no questions on any of this, I will leave it at that. Thank you very much, Your Honors. Thank you, Counsel. We'll ask the clerk to adjourn the court for today.
judges: Roger L. Gregory, Andre M. Davis, Barbara Milano Keenan